## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| Jessie Willard Carrell | ) | Case No. 10-02248-TOM-7 |
| | ) | |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| Jessie Willard Carrell | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Oral Roberts Ministries | ) | Adversary Proceeding No. 10-00029 |
| | ) | |
| Oral Roberts Security Dept. | ) | Adversary Proceeding No. 10-00030 |
| | ) | |
| Oral Roberts University Financial Aid | ) | Adversary Proceeding No. 10-00031 |
| | ) | |
| Oral Roberts University Registrar's Office | ) | Adversary Proceeding No. 10-00032 |
| | ) | |
| Christopher Royale | ) | Adversary Proceeding No. 10-00033 |
| | ) | |
| Richard L. Roberts | ) | Adversary Proceeding No. 10-00034 |
| | ) | |
| Phil Sallee | ) | Adversary Proceeding No. 10-00035 |
| | ) | |
| Clarence Boyd | ) | Adversary Proceeding No. 10-00036 |
| | ) | |
| Defendants. | ) | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## NOT INTENDED FOR PUBLICATION
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***
## <u>MEMORANDUM OPINION</u>

The following Motions are before the Court: 1) Oral Roberts Ministries' (hereinafter,

"ORM") Motion To Dismiss Plaintiff's Complaint And Brief In Support (A.P. No. 10-00029,

Doc. No. 18)[1]; and 2) Richard L. Roberts' (hereinafter, "Dr. Roberts") Motion To Dismiss

---

[1]References to adversary proceedings are referred as "A.P. No." References to
docket numbers in adversary proceedings are referred to as "Doc. No."

Plaintiff's Complaint And Brief In Support (A.P. No. 10-00034, Doc. No. 14).[2] Appearing at the July 12, 2010, hearing on these Motions were Jessie Willard Carrell, Plaintiff appearing *pro se*, and John M. O'Connor and Gregory P. Reilly, attorneys for Defendants ORM and Dr. Roberts appearing by telephone. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the District Court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[3] This is a non-core proceeding that is related to a case under title 11 of the United States Code as defined in 28 U.S.C. §157(c)(1).[4] This Court has considered the pleadings, arguments of counsel, and the law and finds and concludes as follows.[5]

## FINDINGS OF FACT[6]

On April 7, 2010, Plaintiff filed a no asset chapter 7 bankruptcy petition with this Court.[7]

---

[2]The Court will also address the viability of the other adversary proceedings listed in the style above. The Court will not address Plaintiff's adversary proceeding filed against Sallie Mae *et al.* in this Memorandum Opinion (AP No. 10-00037).

[3]The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:

The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[4]28 U.S.C. § 157(c)(1) provides in pertinent part:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.

[5]This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, applicable to adversary proceedings in bankruptcy pursuant to Federal Rule of Bankruptcy Procedure 7052.

[6]Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. *See ITT Rayonier, Inc. v. U.S.*, 651 F.2d 343 (5th Cir. Unit B July 1981); *Florida v. Charley Toppino & Sons, Inc.*, 514 F.2d 700, 704 (5th Cir. 1975).

[7]Plaintiff received a discharge in this case (Case No. 10-02248-TOM-7) pursuant to 11 U.S.C. § 727 on August 9, 2010.

2

On April 9, 2010, Plaintiff filed nine (9) adversary proceedings which asserted various causes of action against various Defendants. However, the complaints filed in support of these adversary proceedings were insufficient. Consequently, the Clerk of the Court filed and entered a Notice Of Hearing in each of these adversary proceedings which notified Plaintiff that this Court would hold a show cause hearing on April 29, 2010, to determine whether all nine of these adversary proceedings should be dismissed with prejudice for Plaintiff's failure to file sufficient complaints in support of these adversary proceedings.

At the April 29, 2010, show cause hearing, the Court noted that Plaintiff's adversary proceedings would not be able to proceed as filed due to the insufficiency of the complaints filed in support thereof. The Court then allowed Plaintiff thirty (30) days to file sufficient complaints. On May 25, 2010, Plaintiff filed the following complaints (hereinafter, referred to as "amended complaints").

    1.      10-00029-TOM - *Carrell v. Oral Roberts Ministries*[8]

The amended complaint filed by Plaintiff in his adversary proceeding against ORM provides as follows:

> Richard was President & CEO of both Oral Roberts Ministries University. I Jessie Carrell was hit In The back of The head with a Baseball Bat In The Dorm Hall where I was staying at Oral Roberts University on September 24, 2004. My friend Wade Young Transported Me to St. Francis Hospital. I was admitted overnight. They determined I had a Post Cocusion [sic]. I have had a lot of headaches, memory loss, hypercusive, Tinnitus. I haven't been able to work because of This.

---

[8]Plaintiff initially supplied the adversary proceeding number connected to this adversary proceeding - 10-00029 - in the style of this complaint, but it appears that he subsequently crossed out the numbers "29" and replaced them with the numbers "34," which correspond with his adversary proceeding against Dr. Roberts.

2.      10-00030-TOM - *Carrell v. Oral Roberts University Security Dept.*

Plaintiff's amended complaint against Oral Roberts University Security Department

provides as follows:

> I don't believe They investigated my case. I Jessie Carrell was hit
> on The back of The head with a baseball bat In the Dorm Hall at
> Oral Roberts University on September 24, 2004. My friend Wade
> Young came over to the Dorm. He transported Me to St. Francis
> Hospital. I was admitted overnight. They determined I had a Post
> Concusion [sic]. I have had a lot of headaches, memory loss,
> hypercusive Tinnitus. I haven't been able to work because of this.

3.      10-00031-TOM - *Carrell v. Oral Roberts University Financial Aid*

The language of Plaintiff's amended complaint against Oral Roberts University Financial

Aid is as follows:

> Sueing [sic] me despite of me filing a total disability form. I Jessie
> Carrell was hit on the back of the head with a baseball bat In the
> dorm Hall where I was staying at Oral Roberts University on
> September 24, 2004. My friend Wade Young came over to The
> Dorm. He Transmitted me to St. Francis Hospital. I was admitted
> overnight. They determined I had a post concusion [sic]. I have
> had a lot of headaches, memory loss, hypercusive, Tinnitus. I
> haven't been able to work because of this.

Under the "CAUSE OF ACTION" section of Form 104, Plaintiff provides the following: "I was

hit in the back of the head. I submitted a total disability form signed by my Dr saying I could not

work and they returned it and have continued harassing me despite me being in bankruptcy."

4.      10-00032-TOM - *Carrell v. Oral Roberts University Registrar's Office*

The following is Plaintiff's amended complaint against Oral Roberts University

Registrar's Office:

> Will not issue my degree, and I believe it's because of the Assault.
> I Jessie Carrell was hit on the back of the head with a baseball bat

4

> In the dorm at Oral Roberts University on September 24, 2004.
> My friend Wade Young came over to the Dorm. He Transported
> me to St. Francis Hospital. I was admitted over night. They
> determined I had a Post Concusion [sic]. I have had a lot of
> headaches, memory loss, hypercusive, Tinnitus because of this. I
> haven't got to work because of this.

Under the "CAUSE OF ACTION" section of Form B104, Plaintiff provides the following:

> "Despite having the hours to graduate they will not issue my degree. I am of the impression that
> it was because of the civil case that I had against ORU. It was messed up because my attorney
> quit last minute, and I did not know the trial date."

    5.    10-00033-TOM - *Carrell v. Royale*

Plaintiff's amended complaint against Mr. Christopher Royale is as follows:

> Christopher Royale was Dean of Men. I Jessie Carrell, was hit in
> The back of The head with a Baseball Bat, In The hall of The
> Dorm room on September 24, 2004. My friend Wade Young
> Came over to the Dorm where I was. He Transported me to St.
> Francis Hospital where I was admitted overnight. They determined
> I had a Post concusion [sic]. I have had a lot of severe headaches,
> memory loss, hypercusive, Tinnitus. I haven't been able to work
> because of this. He also yelled and screamed at me in his office. I
> have witnesses of this.

Under the "CAUSE OF ACTION" section of Form 104, Plaintiff provides that

> Chris Royale was dean of Men while I attended ORU. Dean
> Royale on several occassions [sic] yelled & screamed at me in his
> office over something that I Did not do. I threatened to sue him
> and ORU for not following their own handbook, and then I was
> assaulted on campus.

    6.    10-00034-TOM - *Carrell v. Roberts*

Plaintiff's amended complaint against Dr. Richard Roberts provides as follows:

> Richard was President & CEO of Oral Roberts University, and
> Oral Roberts Ministries At the time of the Assault. I Jessie Carrell

5

was hit In The back of The head with a baseball bat In the Dorm Hall where I was staying at Oral Roberts University on September 24, 2004.  My friend Wade Young came over to the University dorm.  He transported me to St. Francis Hospital In Tulsa Oklahoma.  I was admitted overnight.  They determined I had a post Cocusion [sic].  I have had a lot of severe headaches, memory loss, hypercusive, Tinnitus.  I haven't got to work because of this.  He also committed professional negligence by not following the ORU handbook, and calling my parents.  Wade Young called them from my cell to tell them what happened, and that I was in the hospital.

7.  10-00035-TOM - *Carrell v. Sallee*

Plaintiff provides the following as his amended complaint against Phil Sallee:

Phil Sallee was Registrar's[.] I was hit in The back of the head with a Baseball Bat In the Dorm Room Hall, where I was staying at Oral Roberts University.  On September 24, 2004, My friend Wade Young came over to the Dorm where I was.  He transported me to St. Francis Hospital in Tulsa Oklahoma.  I was admitted over night[.] They determined I had a Post Concusion [sic].  I have had a lot of severe headaches, memory loss, hypercusive, Tinnitus.  I haven't been able to work because of this.

Under the "CAUSE OF ACTION" section of Form 104, Plaintiff provides that "Phil Sallee is the assistant Registrar for ORU.  He also is aware of what happened to me on the ORU campus."

Under the "Other Relief Sought" section of Form 104, Plaintiff provided as follows: "ORU degree issued, Transcript to Be Reevulated [sic], not by Mr. Sallee."

8.  10-00036 - *Carrell v. Boyd*

Plaintiff's amended complaint against Dr. Clarence Boyd is as follows:

Dean of Students.  I was hit in the back of The head with a Baseball bat.  In The Dorm hall where I was staying at Oral Roberts University on September 14, 2004.  My friend Wade Young came over to the University Dorm.  Wade Transported me to St. Francis Hospital in Tulsa Oklahoma.  I was admitted overnight.  They determined I had a Post Concusion [sic].  I have

6

had a lot of severe headaches.  Memory loss, hypercusive, Tinnitus.
I haven't got to work because of This.

Under the "CAUSE OF ACTION" section of Form 104, Plaintiff provides that "Dr. Boyd was Dean of Students when I got hit in the back of the head.  He nor his staff called my parents to tell them what happened.  ORU's handbook states this was supposed to happened."

On June 25, 2010, counsel for ORM and Dr. Roberts filed Motions To Dismiss the adversary proceedings filed against ORM and Dr. Roberts, respectively.  In both Motions, counsel assert that Plaintiff's adversary proceeding is due to be dismissed because Plaintiff has failed to state a claim upon which relief can be granted.  In support of this argument, counsel first note in each Motion that the only potential cause of action Plaintiff asserts in his amended complaint is negligence, which is barred by the statute of limitations under Alabama and Oklahoma law.  Additionally, counsel note that Plaintiff has failed to provide any factual allegations in support of his negligence claims which could plausibly entitle Plaintiff to relief under a theory of negligence.

On July 12, 2010, the Court held a hearing that was a pre-trial conference on Plaintiff's amended complaints against ORM and Dr. Roberts as well as a hearing on ORM's and Dr. Roberts' Motions To Dismiss.  During this conference, the Court noted that Plaintiff's claims against ORM and Dr. Roberts would likely fail due to the running of the statute of limitations on Plaintiff's apparent negligence claims.  The Court then asked Plaintiff if he was aware of any legal authority that might toll the statute of limitations applicable to these claims.  Plaintiff responded to the Court's question by noting that he believed there was no statute of limitations

7

for a federal assault claim,[9] but he was unable to refer the Court to any section of the United States Code or any other legal authority for support of this position.  Plaintiff then requested thirty (30) days to find legal support for his position.  The Court granted this request and ordered Plaintiff to file a response to Defendants' Motions To Dismiss on or before August 20, 2010. The Court further ordered that any reply to Plaintiff's response  would be due on or before September 3, 2010.

Although Plaintiff did not file a response in A.P. 10-00029 as directed, he filed a Reply to ORM's Notice To The Court Of Plaintiff's Non-Filing Of A Response To Defendant's Motion To Dismiss on September 9, 2010.  Plaintiff's Reply does not refer the Court to any legal authority which supports Plaintiff's contention that there is not a statute of limitations for a federal assault claim.  Plaintiff's Reply also fails to cite any legal authority which would provide for the tolling of the statute of limitations applicable to Plaintiff's apparent negligence claims against ORM.  Plaintiff's Reply does, however, include the following documents as exhibits:  1) an e-mail, the recipient of which is unknown, from Reverend Jessie W. Carrell III dated September 28, 2004, which provides Plaintiff's recollection of being hit in the head by an individual named Roland during the "pillow fight" and Plaintiff's subsequent trip to the hospital; 2) an e-mail dated September 23, 2004, from Plaintiff to Howie Rosser, an officer employed by the Oral Roberts University Department of Public Safety & Security, that is substantially similar to the one previously outlined; 3) Stephan Markland's "Statement of Witness" taken by the Oral

---

[9]It appears that Plaintiff was confused when he responded to the Court's question. Though Plaintiff referred to a federal assault claim, his Response to Dr. Robert's Motion To Dismiss as outlined, *infra*, indicates that he meant to refer to a negligence claim.

Roberts University Department of Public Safety & Security on October 1, 2004, which provides Mr. Markland's recollection of the "pillow fight" that occurred during the evening of September 20, 2004, and Plaintiff's return to campus the day thereafter; 4) Roland Bell's "Statement of Witness" taken by the Oral Roberts University Department of Public Safety & Security on October 1, 2004, which provides Mr. Bell's recollection of the same events; 5) Officer Howard Rosser's "Incident Report" dated October 1, 2004, which outlines Officer Rosser's communications with Plaintiff regarding the "pillow fight" that occurred on September 20, 2004, and the medical diagnoses Plaintiff allegedly received from the doctors at St. Francis Hospital; 6) a letter of appreciation from "Carolyn" to "Wade" for taking care of Plaintiff; and 7) Oral Roberts University Department of Public Safety & Security Officer Randy Luck's "Incident Report" dated September 14, 2004, which outlines Officer Luck's communication with Plaintiff and "Wade Young" when they arrived at "Dispatch" to report the incident that had occurred on the evening of September 14, 2004.[10]  None of these documents provide that Dr. Roberts was in any way involved in the "pillow fight" that allegedly caused Plaintiff's alleged injuries.

In AP 10-00034, Plaintiff filed a Response to Dr. Roberts' Motion To Dismiss on August 20, 2010.  Included in this Response is a general discussion, unsupported by any legal authority, of when a statute of limitations may be tolled.  Plaintiff then provides his opinion, unsupported by any legal authority, that the statute of limitations has been tolled in his case because his "tinnitus and hypercusive" were "discovered by the ENT" in 2009, and because he continues to

---

[10]There appears to be some confusion as to the date of the incident -  "pillow fight" -  as evidenced  by Plaintiff's reference to September 24, 2010, and September 14, 2010, Mr. Markland's reference to September 20, 2004, Officer Rosser's reference to September 20, 2004, and Officer Luck's reference to September 14, 2004.

Case 10-00031-TOM    Doc 10    Filed 11/10/10    Entered 11/10/10 11:08:12    Desc Main
Document      Page 9 of 23

suffer "[s]eizures due to the injury, latest one last week."  In support of this position, Plaintiff provides another individual's opinion that the statute of limitations has been tolled; however, this opinion is also unsupported by any legal authority.  Plaintiff then proceeds to offer a definition of "*Criminal negligence/professional*," which is also unsupported by any legal authority, and what appears to be his personal opinion that Dr. Roberts is liable for criminal negligence in this case.  Additionally, Plaintiff cites to 18 U.S.C. § 3282,[11] which, according to Plaintiff, provides that there is no statute of limitations for criminal negligence.  Plaintiff then provides his personal opinion that Dr. Roberts was "supposed to call [his] parents, call an ambulance and carry me to the hospital, and this is in their own handbook."

Attached as exhibits to this Response are various excerpts from the Oral Roberts

---

[11]18 U.S.C. § 3282 provides as follows:

(a) In general. -- Except as otherwise provided by law, no personal shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed.
(b) DNA profile indictment.-- (1) In general.  In any indictment for an offense under chapter 109A for which the identity of the accused is unknown, it shall be sufficient to describe the accused as an individual whose name is unknown, but who has a particular DNA profile.
(2) Exception.-- Any indictment described under paragraph (1), which is found not later than 5 years after the offense under chapter 109A is committed, shall not be subject to--

    (A) the limitations period described under subsection (a); and
    (B) the provisions of chapter 208 until the individual is arrested or served with a summons in connection with the charges contained in the indictment.

(3) Defined term-- For purposes of this subsection, the term "DNA profile" means a set of DNA identification characteristics.

Contrary to Plaintiff's opinion, this statute provides a five (5) year statute of limitations for the causes of action captured by this statute.

University Student Handbook, one of which provides as follows: "Parents or other responsible persons will be notified when a student is seriously ill or injured." Another of these excerpts found under the heading "MEDICAL EMERGENCIES" provides in pertinent part as follows:

> [m]edical emergencies are to be handled by Student Affair personnel. Decisions to transport a student by ambulance should involve the Dean of Men, Dean of Women or the Dean of Students. If an ambulance is needed, Security should be contacted immediately. Security will then arrange for an ambulance as well as a Security vehicle to escort the ambulance directly to the location.

On September 9, 2010, Plaintiff filed the exact same Reply he filed in his adversary proceeding against ORM in this adversary proceeding.

## CONCLUSIONS OF LAW[12]

### I. LEGAL STANDARD

The Motions To Dismiss filed by counsel for ORM and Dr. Roberts both argue that Plaintiff has failed to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief'" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d. 80 (1957)(quoting Fed. R. Civ. P. 8(a)(2)). If a plaintiff's complaint

---

[12]The Court will first address the two motions to dismiss filed by counsel for ORM and Dr. Roberts. The Court will then address the viability of Plaintiff's adversary proceedings filed against the Oral Roberts Security Department, Mr. Christopher Royale, and Mr. Clarence Boyd because the Court believes Plaintiff is asserting the same cause of action - negligence - in these adversary proceedings. The Court will next address what it refers to as the failure to issue degree complaints Plaintiff has filed against Oral Roberts University Registrar's Office and Mr. Phil Sallee. Lastly, the Court will address Plaintiff's amended complaint against Oral Roberts University Financial Aid.

fails to satisfy this requirement, then it may be dismissed for failing to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Supreme Court of the United States announced that a complaint may only survive a 12(b)(6) motion to dismiss if it contains "enough facts," accepted as true, "to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.  In order to satisfy this requirement, the Court noted that "[the] [f]actual allegations [of the complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555, 127 S. Ct. at 1965.  Subsequently, in *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(citing *Twombly*, at 556), the Supreme Court noted that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

II.     **NEGLIGENCE**

*Plaintiff's Amended Complaint Against ORM*[13]

_____

[13]The Court notes that Plaintiff's amended complaint against ORM lists the adversary proceeding number connected to Plaintiffs' adversary proceeding against Dr. Roberts. Further, Plaintiff's amended complaint against ORM references Dr. Richard Roberts as the subject of the adversary proceeding instead of ORM.  Plaintiff's amended complaint against ORM also outlines in a substantially similar manner the events of September 14, 2004, and Plaintiff's subsequent inability to work as outlined in Plaintiff's amended complaint against Dr. Roberts.  The only real distinction between the two complaints is that Plaintiff's amended complaint against Dr. Roberts also includes a statement that Dr. Roberts is liable for professional negligence.  As such, Plaintiff's amended complaint against ORM appears as nothing more than a duplicate of Plaintiff's amended complaint against Dr. Roberts.  The Court will assume that Plaintiff's amended complaint against

Under a generous reading of Plaintiff's amended complaint against ORM, it appears that the only cause of action Plaintiff is asserting against ORM is ordinary civil negligence. The elements of ordinary civil negligence under Alabama law and Oklahoma law[14] are as follows: 1) a duty; 2) a breach of that duty; 3) proximate causation; and 4) injury. *See Jones v. Newton*, 454 So. 2d 1345, 1348 (Ala. 1984)(citing *Mascot Coal Company v. Garrett*, 156 Ala. 290, 47 So. 149 (1908)); *McKellips v. Saint Francis Hosp. Inc.*, 741 P.2d 467, 470 (Okla. 1987)(citing *Lay v. Dworman*, 732 P.2d 455, 457 (Okla. 1986)); *Thompson v. Presbyterian Hosp., Inc.*, 652 P.2d 260, 263 (Okla. 1982).

Plaintiff's amended complaint against ORM notes that Dr. Roberts is the President and CEO of Oral Roberts Ministries University. It then proceeds to outline Plaintiff's recollection of the "pillow fight," his trip to the hospital, and his subsequent inability to work as a result of the injuries he allegedly received as a result of the "pillow fight." It does not in any way allege that ORM owed a duty to Plaintiff, much less that ORM breached a duty owed to Plaintiff that proximately caused Plaintiff's alleged injuries. The documents comprising Plaintiff's Reply similarly fail to allege any facts which could establish any of the elements of ordinary civil negligence, as they only lend support to Plaintiff's recollection of the "pillow fight" and to shed light on the investigation of this "pillow fight." Therefore, Plaintiff's amended complaint and Reply cannot entitle Plaintiff to relief under a theory of civil ordinary negligence under Alabama or Oklahoma law. Plaintiff's adversary proceeding against ORM is due to be dismissed for failure to sufficiently state a claim upon which relief can be granted.

ORM relates to ORM.

[14]The Court need not determine which state's ordinary civil negligence law is applicable since Alabama and Oklahoma have identical definitions of ordinary civil negligence.

13

*Plaintiff's Amended Complaint Against Dr. Roberts*

Plaintiff's amended complaint against Dr. Roberts is nearly identical to Plaintiff's amended complaint against ORM; however, Plaintiff's amended complaint against Dr. Roberts asserts that Dr. Roberts is "also" liable for professional negligence arising out of Dr. Roberts' alleged non-compliance with the Oral Roberts University Student Handbook. It appears that Plaintiff is asserting that Dr. Roberts is liable under theories of ordinary civil negligence and professional negligence.[15] The elements of ordinary civil negligence under Alabama and Oklahoma law are outlined *supra*. Professional negligence under Alabama and Oklahoma law is comprised of the same elements of ordinary civil negligence under Alabama and Oklahoma law; however, professional negligence under Alabama and Oklahoma law involves the breach of a duty which arises under law. *See, e.g.*, ALA. CODE 1975 § 6-5-572; ALA. CODE 1975 § 6-5-540 et seq.; *Manley v. Brown*, 989 P.2d 448, 452 (Okla. 1999); *Krenek v. St. Anthony Hosp.*, 217 P.3d 149, 151 (Okla. Civ. App. 2008).

The Court first notes that language of Plaintiff's amended complaint - "[h]e [, Dr.

---

[15]Though Plaintiff's amended complaint does not include an allegation of criminal negligence, Plaintiff's Response appears to assert that Dr. Roberts is also liable for criminal negligence. Generally speaking, criminal negligence is a degree of negligence marked by "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of the consequences, or a heedless indifference to the safety and rights of others." 21 Am. Jur. 2d Criminal Law § 126. Alabama and Oklahoma have definitions of criminal negligence that are substantially similar to this definition. *See, e.g.*, ALA. CODE 1975 § 13A-2-2(4); *Revilla v. State*, 877 P.2d 1143, 1149-50 (Okla. Crim. App. 1994). As will be discussed *infra*, Plaintiff's amended complaint against Dr. Roberts and the documents he submitted in support thereof fail to allege facts which could entitle Plaintiff to relief under a theory of ordinary or professional negligence. Because Plaintiff's alleged facts can not entitle Plaintiff to relief under these types of negligence, Plaintiff's alleged facts can not entitle Plaintiff to relief under a theory of criminal negligence.

14

Roberts,] also committed professional negligence by not following the ORU handbook, and calling my parents" - suggests that Dr. Roberts had a duty to call Plaintiff's parents after Plaintiff suffered his alleged injuries. However, in the Court's opinion, this statement alone is not sufficient for the purpose of satisfying the *Twombly* pleading standard, as it is nothing more than a legal conclusion based upon a vague factual allegation. In other words, this statement does not "raise a right to relief above the speculative level."

Plaintiff highlights numerous provisions of the Oral Roberts University Student Handbook in his Response. It appears that Plaintiff relies upon two of these provisions to establish that Dr. Roberts was under certain duties in relation to Plaintiff when Plaintiff suffered his alleged injuries. As noted above, Plaintiff alleges that Dr. Roberts was under a duty to call his parents when Plaintiff suffered his alleged injuries. In support of this contention, Plaintiff appears to rely upon the following provision: "[p]arents or other responsible persons will be notified when a student is seriously ill or injured." This provision does indicate that someone from Oral Roberts University had a duty to call Plaintiff's parents after Plaintiff suffered his allegedly serious injuries. However, the language of this provision does not in any way indicate that Dr. Roberts was himself under such a duty; and second there is no admissible evidence before the Court to establish or prove a serious illness or injury. Thus, this provision, without more, fails to "raise a right to relief above the speculative level."

In his Response, Plaintiff also appears to allege that Dr. Roberts was under a duty to call an ambulance on Plaintiff's behalf when Plaintiff suffered his alleged injuries, as Plaintiff asserts that "[Dr. Roberts was] supposed to . . . call an ambulance and carry me to the hospital, and this is in their own handbook." Plaintiff appears to rely upon the following provision of the Oral

15

Roberts University Student Handbook for support of this assertion:

> Medical emergencies are to be handled by Student Affairs personnel. Decisions to transport a student by ambulance should involve the Dean of Men, Dean of Women, or the Dean of Students. If an ambulance is needed, Security should be contacted immediately. Security will then arrange for an ambulance as well as a Security vehicle to escort the ambulance directly to the location.

However, the Court notes that the language of this provision in no way indicates that Dr. Roberts was considered "Student Affairs personnel" or the "Dean of Women," and a cursory review of the factual allegations in Plaintiff's various adversary proceedings, taken as true, reveals that Christopher Royale was the Dean of Men and Clarence Boyd was the Dean of Students when Plaintiff suffered his alleged injuries. Furthermore, there is no indication that Dr. Roberts was considered a member of Oral Roberts University's "Security." As such, this provision does not support Plaintiff's allegation that Dr. Roberts was under a duty to call an ambulance on behalf of Plaintiff when Plaintiff suffered his alleged injuries.

Even if the Court were to conclude that 1) Dr. Roberts had a duty to call Plaintiff's parents after Plaintiff suffered his alleged injuries; 2) Dr. Roberts had a duty to call an ambulance on Plaintiff's behalf after Plaintiff suffered his alleged injuries; and 3) Dr. Roberts breached either or both of these duties, Plaintiff does not allege any facts in his amended complaint, his Response, or his Reply which suggest that his alleged injuries were proximately caused by Dr. Roberts' failure to call Plaintiff's parents or his failure to call an ambulance on Plaintiff's behalf. Plaintiff's amended complaint simply provides Plaintiff's recollection of the "pillow fight," which does not include any reference to Dr. Roberts, his visit to the hospital, his subsequent inability to work as a result of the injuries he allegedly received from the "pillow fight," and a

16

legal conclusion, unsupported by sufficient factual allegations, that Dr. Roberts is liable for professional negligence. Plaintiff's Response merely discusses the tolling of a statute of limitations, the existence of criminal/professional negligence in this case without any discussion of proximate causation, and Plaintiff's opinion that Dr. Roberts had a duty to call Plaintiff's parents and an ambulance when Plaintiff suffered his alleged injuries. The excerpts of the Oral Roberts University Student Handbook which are attached to this Response fail to allege that Dr. Roberts proximately caused Plaintiff's injuries since they merely provide definitions of various terms and outline certain of Oral Roberts University's policies and procedures. Plaintiff's Reply, which is identical to the Reply he filed in the ORM adversary proceeding, fails to allege that Dr. Roberts in any way proximately caused Plaintiff's alleged injuries, as the documents comprising this Reply serve only to support Plaintiff's recollection of the "pillow fight" and to shed light on the investigation of this "pillow fight." The Court concludes that the factual allegations of Plaintiff's amended complaint, Response, and Reply cannot entitle Plaintiff to relief under a theory of ordinary or professional negligence.

Therefore, Plaintiff's amended complaint against Dr. Roberts is due to be dismissed for failure to state a claim upon which relief can be granted.

## III.    STATUTE OF LIMITATIONS

The statute of limitations for negligence claims under Alabama law[16] and Oklahoma law[17] is two years. Under Alabama law[18] and Oklahoma law,[19] the statute of limitations applicable to a

---

[16] ALA. CODE § 6-2-38.
[17] OKLA. STAT. tit. 12, § 95.
[18] *See Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 101, 129 (Ala. 2003).
[19] *See Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.*, 899 P.2d 621, 624 (Okla. 1995).

17

negligence claim begins to run when a cause of action for negligence has accrued, meaning that the negligent act or omission has occurred and the plaintiff has been injured, however slight.

Plaintiff's amended complaints against ORM and Dr. Roberts appear to assert negligence claims that accrued in 2004. The original complaint in each of these adversary proceedings was filed on April 9, 2010, nearly six (6) years after the alleged negligence causes of action accrued. Therefore, even if Plaintiff were able to establish the elements of negligence in these adversary proceedings, these adversary proceedings would be barred by the statute of limitations unless the statute of limitations had been tolled for a sufficient amount of time.

The Court granted Plaintiff a period of time to try to find a legal authority which might toll the statute of limitations applicable in these adversary proceedings. Plaintiff's Reply to ORM's Notice To The Court Of Plaintiff's Non-Filing Of A Response To Defendant's Motion To Dismiss does not refer the Court to any legal authority which would toll the statute of limitations applicable to his apparent negligence claims against ORM; therefore, the Court concludes Plaintiff's amended complaint against ORM is also due to be dismissed because the claims alleged therein are barred by the statute of limitations. In his Response to Dr. Roberts' Motion To Dismiss, Plaintiff asserts that the statute of limitations has been tolled because his "tinnitus and hypercusive" were "discovered by the ENT" in 2009, and because he continues to suffer "[s]eizures due to the injury, latest one last week." In support of this position, Plaintiff offers the opinion of another individual who arrives at the same conclusion. Plaintiff does not, however, cite to any legal authority which would support his position. Therefore, Plaintiff's amended complaint against Dr. Roberts is also due to be dismissed because the claims alleged therein are barred by the statute of limitations.

18

IV.    **THE REMAINING ADVERSARY PROCEEDINGS**

Though motions to dismiss have not been filed in the other adversary proceedings listed in the style above, the Court finds that these remaining adversary proceedings are due to be dismissed for failure to state a claim upon which relief can be granted.

1.    *Carrell v. Oral Roberts Security Department* and *Carell v. Boyd*

In two of these adversary proceedings - *Carrell v. Oral Roberts Security Department* and *Carell v. Royale*, and *Carell v. Boyd* - Plaintiff appears to allege claims of ordinary civil negligence.  In *Carrell v. Oral Roberts Security Department*, Plaintiff seems to allege that the Oral Roberts Security Department was negligent because they did not investigate the "pillow fight."  In *Carrell v. Boyd*, Plaintiff appears to allege that Clarence Boyd was negligent in his capacity as Dean of Students in relation to the events which allegedly resulted in Plaintiff's alleged injuries.  However, Plaintiff has failed to allege facts in either of the amended complaints in these adversary proceedings which would suggest that any of these Defendants owed Plaintiff a duty, or that Defendants breached a duty owed to Plaintiff that proximately caused Plaintiff's alleged injuries.  Instead, Plaintiff simply provides his recollection of the "pillow fight," his trip to the hospital, and his subsequent inability to work as a result of his alleged injuries.  Therefore, these two adversary proceedings are due to be dismissed for failure to state a claim upon which relief can be granted.  Additionally, the Court finds that these adversary proceedings, which were originally filed on April 9, 2010, are barred by the statute of limitations since each of them appears to solely assert negligence claims that accrued in 2004.

2.    *Carrell v. Oral Roberts University Registrar's Office* and *Carell v. Sallee*

In two of the remaining adversary proceedings - *Carrell v. Oral Roberts University*

19

*Registrar's Office* and *Carrell v. Sallee* - Plaintiff appears to allege that the Oral Roberts University Registrar's Office and Phil Sallee, who Plaintiff alleges is the Registrar[20] of Oral Roberts University in his amended complaint, will not issue Plaintiff's degree despite Plaintiff's accumulation of the hours necessary to graduate and receive a degree from Oral Roberts University. Plaintiff alleges that he believes his degree has not been issued to him because of a civil action Plaintiff previously filed against Oral Roberts University. However, these allegations, taken as true, are not sufficient for the purpose of satisfying the *Twombly* pleading standard. With respect to Plaintiff's allegation that he completed enough hours to receive his degree from Oral Roberts University, the Court notes that Plaintiff has failed to provide any factual allegations which could support this claim (e.g. number of hours he successfully completed, Oral Roberts University's graduation requirements). As to Plaintiff's allegation that Oral Roberts University Registrar's Office and Phil Sallee will not issue his degree because of a civil dispute he previously instituted against Oral Roberts University, the Court notes that this allegation is purely speculative; it is nothing more than Plaintiff's personal belief which is unsupported by sufficient factual allegations.[21] Therefore, these adversary proceedings are due to be dismissed because they fail to state a claim upon which relief can be granted.

**3.** *Carrell v. Royale*

---

[20]There appears to be some confusion as to Phil Sallee's position with Oral Roberts University because Plaintiff provides under the "CAUSE OF ACTION" section of Form 104 that Phil Sallee is the assistant Registrar.

[21]The Court notes that it appears the alleged obstacle to the issuance of Plaintiff's degree - a previously instituted civil dispute between Plaintiff and Oral Roberts University - is no longer in existence. Therefore, Plaintiff should not have any difficulty receiving his degree now if the existence of this civil dispute was indeed the reason for withholding Plaintiff's degree.

20

In *Carrell v. Royale*, Plaintiff appears to allege that Christopher Royale was negligent in his capacity as Dean of Men in relation to the events which allegedly resulted in Plaintiff's alleged injuries. Plaintiff also appears to allege that Christopher Royale assaulted him when he "yelled and screamed at [Plaintiff] in his office." With respect to Plaintiff's negligence claim, the Court notes that Plaintiff has failed to allege sufficient facts in his amended complaint which would suggest that Christopher Royale owed Plaintiff a duty, or that Christopher Royale breached a duty owed to Plaintiff that proximately caused Plaintiff's alleged injuries. Instead, Plaintiff simply provides his recollection of the "pillow fight," his trip to the hospital, and his subsequent inability to work as a result of his alleged injuries. Furthermore, the Court finds that Plaintiff's negligence claims are barred by the statute of limitations because this adversary proceeding was originally filed on April 9, 2010, and the alleged negligent act or omission occurred in 2004.

With respect to Plaintiff's assault claim, the Court notes that this claim is based solely upon Plaintiff's allegation that Christopher Royale "yelled & screamed at him in his office." Under Alabama law and Oklahoma law, the elements of assault, whether criminal or civil, include an act intended to cause a harmful or offensive contact or to put another in apprehension of such contact. *See, e.g.*, ALA. CODE §§ 13A-6-20 to -22; OKLA. STAT. tit. 21, § 641; *Wood v. Cowart Enters., Inc.*, 809 So. 2d 835, 837 (Ala. Civ. App. 2001); *Fenwick v. Okla. State Penitentiary*, 792 P.2d 60, 67 n. 4. (Okla. 1990). Plaintiff does not in any way allege that either of these events occurred when Christopher Royale "yelled & screamed at him in his office;" instead, Plaintiff simply alleges that Christopher Royale "yelled & screamed at him." Therefore, Plaintiff's allegation cannot entitle Plaintiff to relief under a theory of assault.

Because Plaintiff has failed to state a claim upon which relief can be granted under a theory of negligence or assault, Plaintiff's adversary proceeding against Christopher Royale is due to be dismissed.

**4.** *Carrell v. Oral Roberts University Financial Aid*

In the remaining adversary proceeding - *Carrell v. Oral Roberts University Financial Aid* - Plaintiff alleges that Oral Roberts University Financial Aid (hereinafter, "ORUFA") is liable to Plaintiff for damages because ORUFA is allegedly "sueing [sic] [Plaintiff] despite of me filing a total disability form." It also appears that Plaintiff is alleging that ORUFA is liable to him for damages because ORUFA "continued harassing me despite me being in bankruptcy."[22] However, neither one of these allegations is supported by any factual allegations which would entitle Plaintiff to any type of relief. Instead, Plaintiff simply provides his recollection of the "pillow fight," his trip to the hospital, and his subsequent inability to work as a result of his alleged injuries. As such, Plaintiff's adversary proceeding against Oral Roberts University Financial Aid is due to be dismissed for failure to state a claim upon which relief can be granted.

<u>**CONCLUSION**</u>

Based on the foregoing, the Court finds that Oral Roberts Ministries' Motion To Dismiss and Dr. Richard Roberts' Motion To Dismiss are due to be **GRANTED**. The Court further finds that Plaintiff's adversary proceedings against Oral Roberts University Security Department, Oral Roberts University Financial Aid, Oral Roberts University Registrar's Office, Christopher Royale, Phil Sallee, and Clarence Boyd are due to be **DISMISSED** for failure to state a claim

---

[22]This language is not found within the body of Plaintiff's amended complaint; rather, this language is found under the CAUSE OF ACTION section of Form 104.

upon which relief can be granted.

A separate order consistent with this Memorandum Opinion will be entered.

Dated this the 10th day of November, 2010.

/s/ Tamara O. Mitchell
United States Bankruptcy Judge

TOM: rdt

xc:    Jessie Willard Carrell, Plaintiff
Gregory P. Reilly and John M. O'Connor, attorneys for Oral Roberts Ministries and
Richard L. Roberts
James G. Henderson, Chapter 7 Trustee
Oral Roberts Ministries
Richard L. Roberts
Oral Roberts Security Dept.
Oral Roberts University Financial Aid
Oral Roberts University Registrar's Office
Christopher Royale
Phil Sallee
Clarence Boyd

23